IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRANCISCO DOMINGUEZ, | ) | 8:03CV536 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER REGARDING AMENDED** |
| vs. | ) | **MOTION FOR NEW TRIAL/MOTION** |
| | ) | **FOR REMITTITUR AND** |
| ABBOTT TRANSPORTATION, INC., | ) | **APPLICATION FOR ATTORNEY** |
| | ) | **FEES AND COSTS** |
| Defendant. | ) | |

This matter is before the court on Abbott Transportation, Inc.'s (Abbott Transportation) amended motion for new trial/motion for remittitur (Filing No. 72) and Francisco Dominguez's (Dominguez) application for attorney fees and costs (Filing No. 68). The parties filed briefs, evidence indices, and reply briefs in support of and in opposition to the motions. For the reasons set forth below, Abbott Transportation's amended motion for new trial or remittitur is granted in part and denied in part, and Dominguez's application for attorney fees and costs is granted.

**I.   BACKGROUND**

Dominguez filed this action against his former employer, Abbott Transportation, alleging Abbott Transportation (1) discriminated against him on the basis of his national origin, in violation of Title VII and the Nebraska Fair Employment Practice Act, and (2) retaliated against him for engaging in protected activity. The court[1] granted summary judgment to Abbott Transportation with respect to Dominguez's retaliation claims, state-law claims, and any possible hostile work environment claim, because Dominguez failed to exhaust his administrative remedies with respect to his retaliation claims, and because he failed to state a cause of action based on hostile work environment.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Before trial, Abbott Transportation filed a motion in limine to exclude at trial all evidence regarding alleged discriminatory or derogatory comments or conduct by Abbott Transportation representatives towards (1) classes of people other than people of Mexican descent, and (2) people of Mexican descent unless such evidence had temporal or contextual relevance to Dominguez's claim. (Filing No. 40). The court denied Abbott Transportation's motion in limine to the extent it sought to exclude evidence of alleged discriminatory or derogatory comments by Abbott Transportation representatives about African Americans, because such evidence may assist the jury in determining whether Abbott Transportation held similar racial animus towards people of Mexican descent, and because Abbott Transportation failed to make a sufficient showing of unfair prejudice that could arise from the admission of evidence of such alleged remarks. (Filing No. 51).

The case proceeded to trial on Dominguez's Title VII claim of national origin discrimination. Following a three-day trial, the jury returned a verdict in favor of Dominguez on his national origin discrimination claim against Abbott Transportation. The jury awarded damages to Dominguez totaling $79,479.20: $51,979.20 for lost compensation, $7500 for emotional harm, and $20,000 in punitive damages. Following trial, the parties filed the motions at issue here. On August 9, 2005, the court conducted a hearing on Abbott Transportation's amended motion for new trial/motion for remittitur and Dominguez's application for attorney fees and costs. At the end of the hearing, the court indicated this written ruling would follow.

## II. DISCUSSION
### A. Motion for New Trial/Motion for Remittitur

Abbott Transportation contends it is entitled to a new trial under Federal Rule of Civil Procedure 59, because the court improperly allowed prejudicial testimony about alleged discriminatory or derogatory comments made by Abbott Transportation representatives about African Americans, and because the jury verdict is against the weight of the evidence. Abbott Transportation also seeks a new trial on the issue of damages, or

alternatively, Abbott Transportation requests remittitur of the compensatory, emotional, and punitive damages awards.

### 1. Standards
#### a. New Trial

Federal Rule of Civil Procedure 59 provides, in relevant part, as follows:

> (a) **Grounds**. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts in the United States.

Fed. R. Civ. P. 59(a). "A new trial is appropriate where the verdict is against the clear weight of the evidence, clearly excessive, or the result of passion or prejudice." MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 930 (8th Cir. 2004). Unlike motions for judgment as matter of law, the court is not required to view the evidence in the light most favorable to the prevailing party; the court may weigh the evidence and judge the credibility of the witnesses. See White v. Pence, 961 F.2d 776, 780-81 (8th Cir. 1992). "On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." Van Steenburgh v. Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999). A district court's authority to grant a new trial pursuant to Rule 59 is fully within its discretion. Larson v. Farmers Coop. Elevator of Buffalo Ctr., 211 F.3d 1089, 1095 (8th Cir. 2000).

#### b. Remittitur

"The decision to order a remittitur is circumscribed by the Seventh Amendment." Thorne v. Welk Inv., Inc., 197 F.3d 1205, 1213 (8th Cir. 1999). A remittitur is ordered "only when the verdict is so grossly excessive as to shock the conscience of the court." Ouachita Nat'l Bank v. Tosco Corp., 716 F.2d 485, 488 (8th Cir. 1983). Ordinarily, where the court determines a remittitur to be appropriate, the plaintiff must be allowed to elect between the

judgment as remitted and a new trial. Thorne, 197 F.3d at 1213; Hetzel v. Prince William County, Va., 523 U.S. 208 (holding when a court grants a remittitur, it must make the remittitur conditional on the prevailing party's acceptance of the remittitur with the option of a new trial). Whether a verdict is sufficiently outrageous to warrant remittitur is committed to the discretion of the district court. Benny M. Estes & Assocs., Inc. v. Time Ins. Co., 980 F.2d 1228, 1235 (8th Cir. 1992).

### 2.    Alleged Prejudicial Testimony

Abbott Transportation contends it is entitled to a new trial, because the evidence presented at trial regarding Abbott Transportation's treatment and comments about African-American employees was not relevant to the issue of national origin discrimination, and because its unfair prejudice and confusion of the issues outweighed any probative value.

The court previously ruled that evidence of alleged discriminatory or derogatory comments by Abbott Transportation representatives about African Americans was relevant and probative of Dominguez's discrimination claim. See Order Regarding Motion in Limine, at *3 (Filing No. 51). The court further held such evidence was admissible pursuant to the balancing process called for by Federal Rule of Evidence 403, because Abbott Transportation failed to make a sufficient showing of unfair prejudice that could arise from the admission of evidence of Zori Abbott's race-related remarks. Id. Abbott Transportation has not shown any reason for the court to depart from its earlier ruling. After hearing all the evidence, the court is more certain now than before trial that the anti-African-American comments are relevant to Dominguez's national origin claim, are not unduly prejudicial and they did not confuse the jury. Some of the anti-African-American and anti-Mexican comments attributed to Abbott Transportation's principle, Zori Abbott, were inseparably intertwined both by subject matter and by timing. The treatment of and comments about African-Americans were relevant to the treatment of other non-caucasian employees, i.e., Mexicans, and was not unfairly prejudicial to Abbott Transportation. The jury's questions, demeanor, and verdict did not reflect any confusion on the issue. Therefore, the court

declines to grant a new trial on the basis it improperly allowed such testimony.

Even if the court improperly allowed prejudicial testimony, the admission of such testimony does not warrant a new trial.  Evidentiary errors warrant a new trial when the errors "affect a party's substantial rights." Williams v. City of Kansas City, Mo., 223 F.3d 749, 755 (8th Cir. 2000).  "Evidentiary errors affect a party's substantial rights when the cumulative effect of the errors is to substantially influence the jury's verdict." Id.  In other words, an evidentiary error warrants a new trial only if "the evidence was so prejudicial that a new trial would likely produce a different result." Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1197 (8th Cir. 2001).

The three-day trial in this case was replete with testimony regarding Zori Abbott's discriminatory statements unrelated to African-American employees.  In particular, Maxine Carda testified Zori Abbott told her to "[f]ire all the Mexicans," and Laura Harrison testified she heard Zori Abbott make negative comments about persons of Mexican descent.  Jerry Lewis, Dominguez's supervisor, related hearing similar anti-Mexican statements from Zori Abbott.  In sum, the court concludes Dominguez presented substantial evidence regarding Abbott Transportation's discriminatory actions independent of the contested testimony, and the jury heard sufficient evidence on which to base their verdict on Dominguez's claim.  Therefore, the court holds the admission of testimony regarding alleged discriminatory or derogatory comments by Abbott Transportation representatives about African Americans would not have substantially affected the jury's ultimate decision and does not warrant a new trial.

### 3. Determination of Discrimination

Abbott Transportation next argues it is entitled to a new trial because the jury's finding of discrimination is contrary to the weight of the evidence.  Abbott Transportation contends that, because it presented evidence Abbott Transportation replaced Dominguez with a person of Mexican origin and evidence Abbott Transportation hired two other

5

employees of Mexican origin in 2002, the jury should have returned a verdict in favor of Abbott Transportation.

The court does not agree that the jury's verdict is contrary to the evidence presented at trial. Abbott Transportation presented testimony it hired and promoted persons of Mexican origin. However, the jury also heard testimony Abbott Transportation hired and promoted these individuals for the sole purpose of showing, after Dominguez's termination, Abbott Transportation was not prejudiced against persons of Mexican origin. Dominguez also presented evidence implying the Mexican employee who replaced Dominguez had different job duties than did Dominguez. The jury was entitled to believe any of this testimony. Therefore, the court denies Abbott Transportation's motion for new trial on the basis the verdict is against the weight of the evidence.

### 4.    Damages

Abbott Transportation argues it is entitled to a new trial on damages, because the jury's award for lost compensation, emotional harm, and punitive damages is against the clear weight of the evidence and shocks the conscience. Alternatively, Abbott Transportation seeks a remittitur of the damages award.

#### a.    Lost Compensation Damages

Abbott Transportation contends the jury erred in awarding lost compensation damages in the amount of $51,979.20, because this award is against the clear weight of the evidence and shocks the conscience. Abbott Transportation argues the jury's award for lost compensation is "beyond speculation," because there is no evidence Dominguez would have worked for Abbott Transportation for three years. In fact, Dominguez's counsel, during his closing argument, conceded Dominguez had not sustained much, if any, lost compensation as a result of his discharge: "[Dominguez] doesn't have some big wage loss claim here. He's not saying, gosh, you know, for three years I've been off work, do the math and award me big bucks for this. . . . [I]n terms of compensatory damages, it's

really not [about money].  So I'm not going to suggest you award any sum certain. . . .  I'm going to say he really didn't lose any wages."

Abbott Transportation contends back pay is an equitable remedy which should be determined by the court.  However, the Supreme Court has noted that "backpay sought from an employer under Title VII would generally be restitutionary in nature" Teamsters v. Terry, 494 U.S. 558, 572 (1990); see also Curtis v. Loether, 415 U.S. 189, 197 (1974).  Therefore, the court concludes it correctly submitted the issue of lost compensation to the jury.

"There is a strong presumption that persons who have been discriminated against are entitled under Title VII to backpay."  King v. Staley, 849 F.2d 1143, 1144 (8th Cir. 1988) (citation omitted).  "A Title VII claimant seeking either back pay or front pay damages has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located."  Excel Corp. v. Bosley, 165 F.3d 635, 639 (8th Cir. 1999).  "The burden of proving that the employee did not make reasonable efforts is on the defendant."  Id.

The evidence presented at trial was insufficient to support the jury's award of lost compensation.  The jury's lost compensation award was based, in part, on speculation.  The jury heard evidence Dominguez earned $7.00 per hour at Abbott Transportation, and Abbott Transportation normally scheduled Dominguez to work three eight-hour shifts per week.  Any additional award for lost tips was speculative and unreasonable, because Dominguez failed to prove how much money he was making in tips or would have earned in tips if he continued working for Abbott Transportation.  No documentary evidence, such as income tax records, were offered to substantiate any tip income.  Furthermore, during oral argument on Abbott Transportation's motion for new trial or remittitur, Dominguez failed to point to any evidence or trial testimony supporting an award of lost tips. Accordingly, the court concludes, based on the evidence presented at trial, the jury, at

most, could have awarded Dominguez lost compensation at $7.00 per hour for three eight-hour shifts per week.

Abbott Transportation also failed to meet its burden of proving Dominguez failed to mitigate his damages, because there was little or no evidence presented at trial regarding: (1) when Dominguez started working another part-time job or increased his hours at Deffenbaugh after being discharged from Abbott Transportation to make up the lost Abbott Transportation hours; (2) how much Dominguez earned or could have earned at a new part-time job or at Deffenbaugh; (3) how long Dominguez, not some average worker, reasonably would have continued to work for Abbott Transportation; and (4) whether and to what extent Dominguez could have otherwise mitigated his damages.  If Abbott Transportation had presented evidence regarding Dominguez's work status and job search after his discharge from Abbott Transportation in relationship to the hours he had been working at Abbott Transportation, such evidence may have shown whether or not Dominguez mitigated his damages.  However, sufficient evidence is not in the record. Therefore, the court concludes the jury could reasonably find, which the jury apparently did, Dominguez was unable to mitigate the lost income and would have continued to work part-time at Abbott Transportation for the entire three years between the date of his discharge and the date of the jury verdict.

Based on the evidence presented at trial, the court believes the maximum award permissible for lost compensation is $26,208, which represents pay for three years of work at twenty-four hours per week at a rate of $7.00 per hour.  Accordingly, the court grants remittitur and reduces the lost compensation award to $26,208.  Dominguez has the option of accepting the remittitur and the resulting lower award of lost compensation damages, or rejecting the remittitur and having a new trial limited solely to the issue of lost compensation damages.

### b. Emotional Damages

Abbott Transportation contends the jury erred in awarding damages to Dominguez for emotional harm in the amount of $7500, because this award is against the clear weight of the evidence and shocks the conscience. Abbott Transportation argues Dominguez failed to produce sufficient evidence of emotional harm, because (1) he did not seek medical treatment, (2) he continued to work his full-time job with Deffenbaugh even after his employment with Abbott Transportation ended, (3) he reapplied for a job with Abbott Transportation even though he believed Abbott Transportation terminated his employment due to his national origin, and (4) although he initially was mad, he testified he "moved on."

Title VII allows the recovery of compensatory damages for, among other things, "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). "[A] compensatory damage award may be based solely on plaintiff's own testimony." Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999). However, compensatory "damages for emotional distress must be supported by competent evidence of 'genuine injury.'" Id. (citation omitted).

Dominguez testified he was mad and angry for some time following his discharge, he had never been discharged before, his discharge bothered him for some time, and he always took personal pride in his work. Based on Dominguez's testimony and demeanor at trial, the court believes Dominguez came across to the jury as a credible and honest person who is hardworking and whose work was an essential element of his self-esteem. Accordingly, the court concludes there is sufficient evidence of emotional pain and suffering and other non-pecuniary loss, and the $7500 damages award for emotional harm is not a miscarriage of justice, nor is it shockingly excessive. Therefore, the court denies Abbott Transportation's motion for new trial or remittitur as to the emotional damages award.

### c.     Punitive Damages

Abbott Transportation challenges the sufficiency of the evidence to support punitive damages, and Abbott Transportation contends the punitive award is excessive. "When a punitive damage award is the result of passion and prejudice, a new trial is usually required and remittitur is an inappropriate remedy." Thorne, 197 F.3d at 1210.

To collect punitive damages under Title VII, Dominguez must show Abbott Transportation's conduct was "motivated by evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." Gorman v. Easley, 257 F.3d 738, 749 (8th Cir. 2001) (rev'd on other grounds) (quotation omitted). Reasonableness of a punitive damages award requires evaluation of the factors enumerated in BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996): the degree of reprehensibility of the defendant's conduct; the ratio or relationship between actual harm inflicted on the plaintiff and the punitive damages award; and civil penalties authorized for comparable misconduct. Punitive damages can be upheld where an employer has "deliberately turned a deaf ear to discriminatory conduct." Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1161 (8th Cir. 2003).

Dominguez presented evidence at trial supporting a finding that Abbott Transportation acted with callousness or reckless indifference to Dominguez's federally protected right not to be discharged on the basis of his national origin. Among other evidence, Jerry Lewis, one of Dominguez's supervisors, testified that when Zori Abbott wanted to fire the Mexicans and African-Americans, he pointed to the EEOC anti-discrimination notice on the wall, and he told Zori Abbott she could not do that. The next day, Dominguez was removed from the work schedule and effectively terminated. If the jury believed this testimony, which the jury clearly did, this conversation and action demonstrated racial and national origin animus, notice of the law prohibiting discrimination based on race and national origin, and either evil motive or reckless or callous indifference to Dominguez's federally protected rights.

10

The jury's verdict of punitive damages in the amount of $20,000 is not excessive, nor does the award result in a miscarriage of justice. Further, the amount of punitive damages is not so high the court would conclude that it is the result of passion and prejudice. See Parsons, 122 F.3d at 529. As there is sufficient evidence to support the imposition of punitive damages in this case and the amount of punitive damages does not "shock the conscience" of this court, nor is it "monstrous" or "shocking," see Eich v. Bd. of Regents for Cent. Mo. St. Univ., 350 F.3d 752, 763 (8th Cir. 2003), the court denies Abbott Transportation's motion for new trial or remittitur on punitive damages.

### B.     Application for Attorney Fees and Costs

By judgment entered on May 31, 2005, this court awarded attorney fees and costs to Dominguez. (Filing No. 64). Dominguez seeks attorney fees in the amount of $28,360 and expenses in the amount of $1,020.56. Based on the reasons set forth in its amended motion for new trial/motion for remittitur, Abbott Transportation requests a new trial on the court's award of attorney fees and costs.

The court, in its discretion, may award a prevailing party on a Title VII claim costs, including reasonable attorney fees. 42 U.S.C. § 2000e-5(k). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002). The party seeking attorney fees has the burden to provide evidence of the hours worked and the hourly rate claimed. Id. In awarding attorney fees, "the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

Dominguez's attorney, Steven Howard, has submitted affidavits to the court documenting the hours expended in litigating this matter and the billing rates for these services. Abbott Transportation contests the underlying claims giving rise to an award of attorney fees and expenses, but Abbott Transportation does not challenge Mr. Howard's

11

requested hourly rate, his hours expended, or Mr. Howard's supporting affidavits. The court finds Mr. Howard's hourly rate of $200 is reasonable. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Fish, 295 F.3d at 851. Based upon the entire record, including the affidavits of attorneys Gerald P. Laughlin and Robert V. Broom, and the court's familiarity with the rates charged by attorneys in the Omaha, Nebraska area, the court concludes the hourly rate charged by Mr. Howard is consistent with the market rate and is reasonable based upon Mr. Howard's skill, expertise, and abilities as observed by the court during the jury trial in this case.

In addition, the court finds the 141.8 hours expended by Mr. Howard are reasonable and were necessary in pursuing this case. In light of Mr. Howard's success achieved in this case, his willingness to take Dominguez's case on a contingent basis, and his quality representation throughout the course of this litigation, the court concludes Mr. Howard is entitled to an award of the full amount of attorney fees requested. See Hensley, 461 U.S. at 430 n.3 (citing the relevant factors that inform a court's reasonableness assessment). Thus, the court awards Dominguez $28,360 in attorney fees.

Dominguez also requests $1,020.56 in costs, which includes $150 for the filing fee, $48.36 for duplication costs, and $822.20 for depositions and transcripts. The court finds the costs reasonable and necessary, and awards Dominguez costs of $1,020.56.

### III. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Abbott Transportation, Inc.'s amended motion for new trial/motion for remittitur (Filing No. 72) is denied in part and granted in part. Dominguez shall, on or before August 22, 2005, notify the court in writing whether he accepts or rejects a remittitur of the lost compensation award to $26,208. If Dominguez accepts the remittitur, the court shall amend the judgment to

      reflect a lost compensation award in the amount of $26,208. If Dominguez rejects remittitur or fails to notify the court on or before August 22, 2005, the court shall order a new trial on the issue of lost compensation damages only. Abbott Transportation's amended motion for new trial/motion for remittitur is denied in all other respects.

2.     Francisco Dominguez's application for attorney fees and costs (Filing No. 68) is granted. Dominguez shall recover reasonable attorney fees in the amount of $28,360, and costs in the amount of $1,020.56.

DATED this 11th day of August, 2005.

                BY THE COURT:

                s/ William Jay Riley
                United States Circuit Judge
                (Sitting by Designation)